UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| CURIA GLOBAL INC.; CURIA NEW YORK, INC; CURIA INDIANA, LLC; CURIA MASSACHUSETTS, INC; CURIA MISSOURI, INC.; CURIA NEW MEXICO, LLC; CURIA BIO, INC.; CURIA BIO CALIFORNIA, INC., | : : : : : : |
| *Plaintiffs*, | Court No. 22-00247 : : |
| v. | : |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATE TRADE REPRESENTATIVE; KATHERINE TAI, in her official capacity as U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; and CHRIS MAGNUS, in his official capacity as COMMISSIONER OF U.S. CUSTOMS & BORDER PROTECTION, | : : : : : : : : : |
| *Defendants*. | : |

_____

## SECOND AMENDED COMPLAINT

Plaintiffs Curia Global, Inc. ("Curia"), Curia New York, Inc., Curia Indiana, LLC, Curia Massachusetts, Inc., Curia Missouri, Inc., Curia New Mexico, LLC, Curia Bio, Inc., and Curia Bio California, Inc., by and through undersigned counsel, hereby allege and state as follows:

### STATEMENT OF THE CASE

1. This action challenges the Defendants' imposition of tariffs on goods imported by Plaintiffs from China allegedly in accordance with Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411 ("Trade Act"). Plaintiffs herein allege that the imposition and collection of duties on products covered by so-called "List 3" and "List 4" was done in violation of both the Trade Act and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

1

## JURISDICTION

2.  Subject matter jurisdiction over this action exists pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

3.  Plaintiff Curia is a privately owned contract research and manufacturing organization that provides drug discovery, development, cGMP manufacturing, and aseptic fill and finish to the pharmaceutical and biotechnology industries. As part of that business, Curia, through its wholly-owned family companies, Curia New York, Inc., Curia Indiana, LLC, Curia Massachusetts, Inc., Curia Missouri, Inc., Curia New Mexico, LLC, Curia Bio, Inc., and Curia Bio California, Inc., imports and has paid duties on products appearing on both List 3 and List 4.

4.  Defendant United States received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i).

5.  The Office of the United States Trade Representative ("USTR") is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted an investigation into China's unfair intellectual property practices pursuant to Section 301 and thereafter made numerous decisions regarding List 3 and List 4.

6. Ambassador Katherine Tai currently holds the position of USTR and serves as the director of the Office of the USTR. In these capacities, she made numerous decisions regarding List 3 and List 4.

7. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under List 3 and List 4.

8. Defendant Chris Magnus is the Commissioner of CBP. In this capacity, he oversees CBP's collection of duties paid by Plaintiffs under List 3 and/or List 4.

## STANDING

9. Plaintiffs have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of the APA. 5 U.S.C. § 702; 28 U.S.C. § 2631(i). Tariffs imposed by Defendants pursuant to List 3 and List 4 adversely affected and aggrieved Plaintiffs because they were required to pay and did pay these unlawful duties.

## TIMELINESS

10. Actions must be brought under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

11. The earliest date on which Plaintiffs' cause of action may have accrued is September 24, 2018—the date on which tariffs were first levied on goods on List 3 pursuant to the USTR's determination published in the Federal Register on September 21, 2018. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). Plaintiffs' cause of action is therefore timely because it is brought within two years of the date on which Plaintiffs paid List 3 and List 4 duties.

## RELEVANT LAW

12. Under Section 301 of the Trade Act, USTR is authorized to investigate the trade practices of a foreign country. 19 U.S.C. § 2411(b). USTR may take "appropriate" action, such as imposing tariffs on imports from a country that administered the unfair practice, where the investigation reveals an "unreasonable or discriminatory" practice. *Id.* § 2411(b), (c)(1)(B).

13. USTR is required under Section 304 of the Trade Act to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

14. Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

## FACTUAL BACKGROUND

15. On August 18, 2017, USTR initiated an investigation into Chinese technology transfer and intellectual property practices pursuant to Section 301 of the Trade Act. *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

16. USTR published its report announcing the results of that investigation on March 28, 2018. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22,

2018), available at https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. The report found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17.

17. On June 20, 2018, USTR published notice of a final list of Chinese products with an approximate trade value of $34 billion upon which it was imposing an additional 25% duty. *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710-11 (June 20, 2018). That list is the so-called "List 1."

18. At the same time that it finalized List 1, USTR announced that it intended to impose a 25% duty on a second proposed list—so-called "List 2"—of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id*. at 28,712.

19. List 2 was published on August 16, 2018, imposing an additional duty of 25% on "279 tariff subheadings" whose "annual trade value . . . [is] approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

20. China retaliated to the U.S. action by imposing duties on U.S.-origin goods. In particular, it imposed 25% tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

21. Explicitly in response to China's retaliation, USTR published a notice proposing to impose duties on additional Chinese-origin products. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018). The notice made no reference to China's technology transfer, intellectual property, or innovation policies. *Id*. (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices" and stating "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017).").

22. The contents of the notice were supported in statements issued by USTR, which said the proposed duties came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

23. The same justifications were echoed by President Trump, who indicated on Twitter that the additional duties were tied to the U.S.-China trade imbalance. *See., e.g.*, @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209; @realDonaldTrump, TWITTER (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

24. On August 1, 2018, USTR announced that it would impose an additional 25% duty on selected products of China in light of alleged illegal retaliation against the United States. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade*

6

*Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), available at https://ustr.gov/about-us/policy-of-fices/press-office/press-releases/2018/august/statement-us-trade-representative. It also announced dates for a public hearing that would occur over a period of six days, ending on August 27, 2018. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018), available at https://ustr.gov/about-us/policyoffices/press-of-fice/press-releases/2018/august/public-hearings-proposed-section-301.

25. At the same time, USTR set the new deadline for the submission of written comments for September 6, 2018 for both initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That timeline—less than one month out—prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to just five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.

26. Despite receiving over 6,000 comments and testimony from roughly 350 witnesses, USTR provided no response. Nonetheless, USTR proceeded to publish its final list—so-called "List 3"—of affected products subject to the additional duties on September 21, 2018. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sep. 21, 2018). It imposed a 10% tariff that was set to rise automatically to 25% on January 1, 2019. *Id*. Notably, this publication was more than 12 months after the initiation of the investigation on August 24, 2017.

27. To justify its actions, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, 19 U.S.C. § 2417(a)(1)(B), claiming the additional tariffs to be a modification of its

7

existing Section 301 action because the burden on U.S. commerce had continued to increase. *Id.* It also maintained that the existing action was no longer "appropriate" due to China's retaliation. *Id.* (citing Section 301(a)(1)(C), 19 U.S.C. § 2417(a)(1)(C)).

28. In May 2019, following unsuccessful trade negotiations with China, USTR announced its intent to raise the tariff rate on List 3 goods to 25% due to China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019). The increase went into effect either May 10, 2019 or June 1, 2019, depending on the day of export. *Id.* Unlike with past impositions of new tariffs, USTR did not seek public comment but merely announced that the increase would occur. *Id*.

29. In addition to the List 3 increases, which remain in effect as of this Complaint, USTR announced on May 17, 2019 that it intended to proceed with the implementation of Section 301 duties on additional products in what would become so-called "List 4." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). The rationale for List 4 was not China's policies with respect to technology transfer, intellectual property, or innovation, but rather to punish China for its failure to meet specific commitments made in prior negotiations and its further retaliation against the United States. *Id.*

30. As with List 3, USTR set a timeline for the public to comment and participate in a hearing that left little room for any meaningful input. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. And again, USTR failed to

8

address to any of the nearly 3,000 comments it received or any of the testimony provided by witnesses (beyond stating that it "takes account of the public comments and the testimony") before issuing a final notice adopting List 4 in two phases. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304-05 (Aug. 20, 2019).

31. Both phases were to be imposed pursuant to USTR's alleged authority under Section 307(a)(1)(B) and (C) to modify its prior action. The phases were distinguished as List 4A and List 4B. List 4A would impose a 10% duty on goods worth roughly $120 billion, effective September 1, 2019. *Id*. at 43,304. List 4B would impose a 10% duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id*. at 43,305. Notably, the notice announcing List 4 was published more than 12 months after the initiation of USTR's investigation on August 24, 2017.

32. The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump has threatened to impose them if China does not meet its obligations under their limited trade deal. *See, e.g.*, @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## STATEMENT OF CLAIMS

### COUNT ONE

**(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**

33. Paragraphs 1 through 32 above are reincorporated by reference.

34. Under the Declaratory Judgment Act, the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

35. USTR failed to base the imposition of Section 301 duties on Chinese products covered by List 3 and List 4 on the acts or policies found to in its report to "burden or restrict" U.S. commerce, as required by 19 U.S.C. § 2411(b)(1).

36. USTR failed to take action to impose duties on List 3 and List 4 products from China within the 12-month period required by 19 U.S.C. §§ 2414(a)(1)(B) and (2)(B).

37. USTR may "modify or terminate" a Section 301 action when the burden on U.S. commerce from the investigated unfair policies or practices investigated increases or decreases. USTR may *not* increase the duties assessed in furtherance of Section 301 for reasons other than the acts, policies, or practices that were found to burden U.S. Commerce.

38. Section 301 actions may be modified or terminated when no longer appropriate. 19 U.S.C. § 2417(a)(1)(C). However, this authorization does *not* permit USTR to increase an existing remedy action. It is authorization only to decrease, remove, or pause the action.

39. Plaintiffs are therefore entitled to a declaratory judgment that the duties imposed on products of China covered by List 3 and List 4 are contrary to law and void *ab initio*.

## COUNT TWO

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

40. Paragraphs 1 through 39 are reincorporated by reference.

41. The Court is authorized under the APA to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction,

authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

42. In promulgating List 3 and List 4, Defendants exceeded their authority under the Trade Act, thereby acting "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

43. Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

44. The promulgation of List 3 and List 4 was arbitrary and capricious because Defendants failed to provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court:

1. Declare the imposition and collection of List 3 duties to be contrary to the law and, therefore, in violation of the APA;

2. Declare the imposition and collection of List 4 duties to be contrary to the law and, therefore, in violation of the APA;

3. Vacate the List 3 and List 4 actions;

4. Order Defendants to refund, with interest as provided by law, all duties paid by Plaintiffs in accordance with List 3 and List 4;

5. Permanently enjoin Defendants from collecting further duties on importations by Plaintiffs of merchandise from China that is included in List 3 and List 4;

6. Award Plaintiffs their costs and reasonable attorneys' fees; and

7. Grant such other relief as may be just and proper.

Date: April 29, 2024

Respectfully submitted,
/s/ *John R. Sandweg*
John R. Sandweg
NIXON PEABODY LLP
799 Ninth Street, NW, Suite 500
Washington, D.C. 20001-4501
(202) 585-8819 (telephone)
jsandweg@nixonpeabody.com

*Counsel for Plaintiffs*